# No. 24-30553

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Carnell C. Morris,

Plaintiff - Appellant

v.

Major M. Estes; Lieutenant Trehan,

Defendants - Appellees

---

## On Appeal from
United States District Court for the Western District of Louisiana

2:21-CV-947

---

## BRIEF OF APPELLANT CARNELL MORRIS

---

SUBMITTED BY:

Aaron Littman *

UCLA School of Law
Prisoners' Rights Clinic
385 Charles E. Young Drive, E.
Los Angeles, CA 90095-1458
(310) 825-9562
littman@law.ucla.edu

Counsel for Appellant Carnell Morris

\* This brief was prepared with the assistance of UCLA School of Law Prisoners' Rights Clinic students Nicholas Castellano, Blake Krawl, Shannon Saul, and Micalyn Struble.

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Carnell Morris | Aaron Littman, UCLA School of Law, Los Angeles, CA |

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Major Estes | Not Represented |
| Lieutenant Trehan | Not Represented |

s/ Aaron Littman
Attorney of record for
Appellant Carnell Morris

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Carnell Morris respectfully requests oral argument. Although no appearance has been entered on behalf of appellees in this case, this is due to their default in the court below. If oral argument is set, undersigned counsel will seek leave for a certified law student from the UCLA Law Prisoners' Rights Clinic to present it under his supervision.

Mr. Morris, an incarcerated pro se plaintiff, filed this lawsuit to challenge defendant prison officers' use of excessive force against him in violation of the Eighth Amendment. The facts he alleged state a classic claim: although he was restrained and posed no threat, defendants threw him headfirst into a footlocker. Mr. Morris diligently prosecuted his case, but defendants failed even to answer his complaint. Nonetheless, when he sought entry of default, the district court instead dismissed his complaint on several erroneous—indeed, spurious—grounds, including by applying the Prison Litigation Reform Act's physical injury requirement far outside its bounds and by creating requests for injunctive relief out of whole cloth and then deeming that relief (which Mr. Morris never sought) unavailable. Now represented by pro bono counsel, Mr. Morris deserves serious consideration by this Court and the court below.

## TABLE OF CONTENTS

**Contents**                                                           **Page(s)**

CERTIFICATE OF INTERESTED PERSONS ...................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS ..................................................................................... v

TABLE OF AUTHORITIES ............................................................................... 1

INTRODUCTION ................................................................................................ 8

JURISDICTIONAL STATEMENT ................................................................... 10

STATEMENT OF THE ISSUES ....................................................................... 10

STATEMENT OF THE CASE ........................................................................... 12

    I.    Mr. Morris Experienced a Mental Health Crisis When Officers Denied Him Access to Food and Ignored His Repeated Requests for Mental Health Care.... 12

    II.    Officers Threw Mr. Morris—Handcuffed Behind His Back—Headfirst into a Footlocker. .................................................................................................. 13

    III.    Procedural History ................................................................................. 14

SUMMARY OF THE ARGUMENT .................................................................. 17

ARGUMENT ...................................................................................................... 19

    I.    Standard of Review .................................................................................. 19

II.    Mr. Morris Has Adequately Alleged an Eighth Amendment Excessive Force Claim..................................................................................... 20

    A.    *Hudson* and *Whitley* Establish the Legal Standard for an Eighth Amendment Excessive Force Claim............................................... 21

    B.    Mr. Morris's Claim Satisfies the Objective Prong Because the Force Used Was More Than De Minimis................................................ 23

    C.    Mr. Morris' Claim Satisfies the Subjective Prong Because the Force Was Used Maliciously and Sadistically for the Purpose of Causing Harm. ... 25

III.    Mr. Morris's Claim Is Not Barred by the PLRA's Physical Injury Requirement. ............................................................................... 32

    A.    The District Court Improperly Applied the PLRA's Physical Injury Requirement.............................................................................. 32

    B.    Mr. Morris Has Alleged More Than De Minimis Injury and Is Therefore Eligible to Receive Compensatory Damages for Both Physical and Mental and Emotional Injury............................................................... 33

    C.    The Physical Injury Requirement Applies Only to Compensatory Damages for Mental and Emotional Injury. ................................. 37

D.    Mr. Morris Has Sought, and Alleged Facts Sufficient to Support, Punitive Damages, Which Are Never Barred by the PLRA's Physical Injury Requirement............................................................................. 40

IV.    Although Mr. Morris Did Not Request Injunctive Relief, the District Court Improperly Dismissed His Claim on the Alternate (and Erroneous) Basis That It Could Not Grant Such Relief. ............................................................ 42

A.    Mr. Morris Did Not Seek Injunctive Relief in His Complaint. ............. 42

B.    Even Had Mr. Morris Requested Expungement, *Heck* Would Not Apply to Prison Disciplinary Violations Which Do Not Implicate Criminal Convictions or Sentences................................................................. 43

C.    Even Had Mr. Morris Requested Termination of Officers, Such Relief Would Be Available When Necessary to Correct an Eighth Amendment Violation. ..................................................................................... 44

CONCLUSION ............................................................................................. 45

CERTIFICATE OF SERVICE........................................................................ 47

CERTIFICATE OF COMPLIANCE ............................................................... 48

vii

# TABLE OF AUTHORITIES

**Cases**…………………………………………………………………**Pages(s)**

*Alderson v. Concordia Parish Corr. Facility*,
　848 F.3d 415 (5th Cir. 2017)……………………………………………20

*Alexander v. City of Round Rock*,
　854 F.3d 298 (5th Cir. 2017)……………………………………...26, 37

*Alexander v. Hall*,
　No. 4:20-CV-21-SA-JMV,
　2024 WL 4268017 (N.D. Miss. Sept. 23, 2024)………………………........40

*Alexander v. Tippah Cnty.*,
　351 F.3d 626 (5th Cir. 2003)……………………………………………….34

*Allah v. Al-Hafeez*,
　226 F.3d 247 (3d Cir. 2000)………………………………………………..39

*Anderson v. Nosser*,
　438 F.2d 183 (5th Cir. 1971)…………………………………………….44

*Archuleta v. Marshall*,
　221 F.3d 1351 (10th Cir. 2000)…………………………………………….38

*Aucoin v. Cupil*,
　958 F.3d 379 (5th Cir. 2020)……………………………………………...27-29

*Baldwin v. Stalder*,
　37 F.3d 836 (5th Cir. 1998)……………………………………...26-27, 34

*Bell v. Williams*,
　108 F.4th 809 (9th Cir. 2024)……………………………………………35

*Benoit v. Bordelon*,
　596 F. App'x 264 (5th Cir. 2015)…………………………………26, 29

*Buehler v. Dear*,

27 F.4th 969 (5th Cir. 2022)……………………………………………..26

*Byrd v. Harrell*,
48 F.4th 343 (5th Cir. 2022)…………………………………..26, 30-31

*Calhoun v. Hargrove*,
312 F.3d 730 (5th Cir. 2002)………………………………………………20

*Clark v. Gonzalez*,
129 F.3d 612 (5th Cir. 1997)…………………………………………….28

*Cowart v. Erwin*,
837 F.3d 444 (5th Cir. 2016)…………………………………………….*passim*

*Daniels v. Sproul*,
No. 1:12-cv-4 (WLS),
2013 WL 3964813 (M.D. Ga. July 31, 2013)………………………………36

*D'Attore v. N.Y. City Dep't of Corr.*,
No. 10 CIV. 815(JSR)(MHD),
2012 WL 4493977 (S.D.N.Y. Sept. 27, 2012)……………………………..36

*Dean v. Jones*,
984 F.3d 295 (4th Cir. 2021)…………………………………………….23

*Edwards v. Byrd*,
No. 4:10CV02042 BSM/JTR,
2013 WL 12106339 (E.D. Ark. Feb. 11, 2013)……………………………..36

*Escalante v. Lidge*,
34 F.4th 486 (5th Cir. 2022)……………………………………………..19

*Glenn v. City of Tyler*,
242 F.3d 307 (5th Cir. 2001)…………………………………………….24

*Gomez v. Chandler*,
163 F.3d 921 (5th Cir. 1999)…………………………………………….*passim*

*Green v. Atkinson*,
623 F.3d 278 (5th Cir. 2010)…………………………………………...19-20

2

*Grenning v. Miller-Stout*,
    739 F.3d 1235 (9th Cir. 2014)……………………………………………...38

*Heck v. Humphrey*,
    512 U.S. 477 (1994)…………………………………………………..*passim*

*Hoever v. Marks*,
    993 F.3d 1353 (11th Cir. 2021)…………………………………………...38-39

*Hudson v. McMillian*,
    503 U.S. 1 (1992)…………………………………………………..*passim*

*Hutchins v. McDaniels*,
    512 F.3d 193 (5th Cir. 2007)…………………………………………………40

*Hyde v. City of Wilcox*,
    23 F.4th 863, 871-72 (9th Cir. 2022)…………………………………………29

*Ikerd v. Blair*,
    101 F.3d 430 (5th Cir. 1996)…………………………………………….*passim*

*In re Deepwater Horizon*,
    785 F.3d 986 (5th Cir. 2015)…………………………………………………19

*Jones v. Brown*,
    No. 2:16-cv-01505-AKK-JHE,
    2017 WL 288540 (N.D. Ala. June 16, 2017)……………………………....38

*Jones v. Greninger*,
    188 F.3d 322 (5th Cir. 1999)…………………………………………………40

*Kitchen v. Dall. Cty.*,
    759 F.3d 468 (5th Cir. 2014)…………………………………….22, 27, 30

*Krist v. Smith*,
    439 F.2d 146 (5th Cir. 1971)…………………………………………………44

*Legate v. Livingston*,
    822 F.3d 207 (5th Cir. 2016)…………………………………………………20

3

*Lewis v. Lynn*,
   236 F.3d 766 (5th Cir. 2001)……………………………………………………19

*Lytle v. Bexar Cnty.*,
   560 F.3d 404 (5th Cir. 2009)……………………………………………………24

*Madrid v. Woodford*,
   No. C90-3094 TEH,
   2004 WL 2623924 (N.D. Cal. Nov. 17, 2004)…………………………………..45

*Martin v. Seal*,
   510 F. App'x 309 (5th Cir. 2013)………………………………………………..25

*Mayfield v. Texas Dep't of Crim. Just.*,
   529 F.3d 599 (5th Cir. 2008)……………………………………………………40

*McFadden v. Nicholson*,
   No. 1:14CV644,
   2017 WL 991052 (M.D.N.C. Mar. 13, 2017)……………………………………35

*Mitchell v. Cervantes*,
   453 F. App'x 475 (5th Cir. 2011)………………………………………..23, 24, 28

*Montgomery v. May*,
   No. 5:15cv91/RV/EMT,
   2015 WL 7575073 (N.D. Fla. Oct. 21, 2015)……………………………………35

*Morgan v. Comm'r Dzurenda*,
   No. 3:14-cv-966 (VAB),
   2015 WL 5722723 (D. Conn. Sept. 29, 2015)……………………………………35

*Morris v. Trevino*,
   301 F. App'x 310 (5th Cir. 2008)………………………………………………..28

*Mosley v. White*,
   464 F. App'x 206 (5th Cir. 2010)………………………………………………..43

*Muhammad v. Close*,
   540 U.S. 749 (2004)……………………………………………………………..43

4

*Oliver v. Keller*,
  289 F.3d 623 (9th Cir. 2002)……………………………………………….39

*Pames v. Pierce*,
  No. C-1-12-285,
  2014 WL 4773999 (S.D. Ohio Sept. 24, 2014)…………………………35-36

*Payne v. Parnell*,
246 F. App'x 884 (5th Cir. 2007)………………………………………….21-22, 29

*Petta v. Rivera*,
  143 F.3d 895 (5th Cir. 1998)……………………………………………..22

*Piazza v. Jefferson Cnty.*,
  923 F.3d 947 (11th Cir. 2019)…………………………………………...29

*Robertson v. Town of Farmerville*,
  830 F. Supp. 2d 183 (W.D. La. 2011)…………………………………...36

*Sam v. Richard*,
  887 F.3d 710 (5th Cir. 2018)……………………………………………..36

*Schmidt v. Gray*,
  399 F. App'x 925 (5th Cir. 2010)………………………………..........37

*Shaw v. Murphy*,
  532 U.S. 223 (2001)……………………………………………………..44

*Sherman v. Orrell*,
  No. 6:13-cv-06049,
  2015 WL 6131950 (W.D. Ark. Oct. 19, 2015)………………………...35

*Siglar v. Hightower*,
  112 F.3d 191 (5th Cir. 1997)……………………………………………..32

*Slicker v. Jackson*,
  215 F.3d 1225 (11th Cir. 2000)…………………………………………..41

*Smith v. Wade*,

461 U.S. 30 (1983)……………………………………………………41

*Suate-Orellana v. Barr*,
    979 F.3d 1056 (5th Cir. 2020)…………………………………………...19

*Talib v. Riedl*,
    No. 3:14-cv-1388-J-39MCR,
    2016 WL 696082 (M.D. Fla. Feb. 22, 2016)………………………………..35

*Tate v. Wiggins*,
    805 F. App'x 159 (3d Cir. 2020)………………………………………...38

*Taylor v. Books A Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002)…………………………………………….20

*Taylor v. Stevens*,
    946 F.3d 211…………………………………………………………..34

*Thompkins v. Belt*,
    828 F.2d 298 (5th Cir. 1987)………………………………………….41

*Waddleton v. Rodriguez*,
    750 F. App'x 248 (5th Cir. 2018)………………………………………..31

*Washington v. Hively*,
    695 F.3d 641 (7th Cir. 2012)………………………………………….23

*Whitley v. Albers*,
    475 U.S. 312 (1986)………………………………………………….21-22

*Wilkins v. Gaddy*,
    559 U.S. 34 (2010)……………………………………………23, 26, 37

*Williams v. Bramer*,
    180 F.3d 699 (5th Cir. 1999)………………………………………….24

*Williams v. Kaufman Cnty.*,
    352 F.3d 994 (5th Cir. 2003)………………………………………….40

*Wilson v. Seiter*,

6

501 U.S. 294 (1991)……………………………………………………………21, 23

*Velasquez v. Woods*,
    329 F.3d 420 (5th Cir. 2003)……………………………………………………20

**Statutes…………………………………………………………………Pages(s)**

18 U.S.C. § 3626(a)(1)(A)…………………………………………………………...45

28 U.S.C. § 1291…………………………………………………………………10

28 U.S.C. § 1331…………………………………………………………………10

28 U.S.C. § 1343…………………………………………………………………10

28 U.S.C. § 1915(e)(2)(B)………………………………………………………...10

42 U.S.C. § 1983………………………………………………………...14, 20, 41, 43

42 U.S.C. § 1997e(e)……………………………………………………………*passim*

# INTRODUCTION

This is a textbook case of excessive force. Lieutenant Trehan and two other prison officers handcuffed Mr. Morris—a 58-year-old, diabetic man—behind his back and then, once he was restrained, threw him face-first across the room into a footlocker.

Twenty minutes earlier, an officer had locked Mr. Morris on the tier when he took a while to use the restroom, preventing him from going to eat. Mr. Morris, knowing the effects that missing a meal might have on his diabetes, pleaded with the officer to let him leave. The officer simply smirked. This treatment provoked a strong emotional reaction. Mr. Morris recognized that he needed to speak with a mental health specialist and asked to be seen urgently.

Instead of providing him access to mental healthcare, one officer told Mr. Morris that the officers were going "to lock [his] ass up." Mr. Morris became increasingly distressed and loudly repeated his request for immediate mental health care over a dozen times. The officers continued to ignore him. As his crisis progressed, the officers responded by spraying him with two cans of chemical agent, pushing him to the floor, and handcuffing him behind his back. At this point, the officers could have simply lifted Mr. Morris up and escorted him off the tier. Instead, Lt. Trehan and the two officers threw the restrained and defenseless Mr. Morris—

soaked in chemical agent, hands cuffed behind his back— across the room, headfirst into a footlocker. He sustained a facial injury warranting medical attention.

These facts form the basis for a straightforward Eighth Amendment excessive force claim. The district court's dismissal was error for several reasons.

Mr. Morris adequately pleaded a non-frivolous Eighth Amendment claim. Mr. Morris was restrained, with his hands cuffed behind his back, when he was nonetheless thrown headlong across the room into a footlocker. This action was unnecessary, served no purpose except to cause harm, and caused an injury warranting medical attention. It therefore provided Mr. Morris sufficient grounds to state a claim for excessive use of force.

However, the lower court erroneously believed that Mr. Morris was required, and failed, to allege more than a de minimis physical injury for his claim to proceed under the Prison Litigation Reform Act's ("PLRA") physical injury requirement. But this provision does not bar Mr. Morris's claim. He did allege a greater than de minimis injury and was thus eligible to receive compensatory damages for mental and emotional injury. Moreover, even if he had not, the requirement does not apply to either compensatory damages for physical injury or punitive damages—both of which he requested.

9

Additionally, the lower court applied two doctrines which bar specific forms of injunctive relief. But there is a problem: Mr. Morris did not request injunctive relief in his complaint. Even if he had, those forms of relief would not be barred by the doctrines the lower court cited.

While the opinion below looks like a routine dismissal of a prisoner's frivolous claim, it is anything but. Instead, it is a slipshod application of irrelevant law to distorted facts. This Court should correct these errors and reverse the district court's dismissal.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). Final judgment was entered on July 25, 2024. ROA.294. Notice of appeal was timely filed—it was mailed from prison on August 14, 2024, and docketed on August 21. ROA.295-96. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.     Under the Eighth Amendment, prisoners are protected from the use of excessive force. Whether force is excessive is judged in light of the need for force

in context. While Mr. Morris was handcuffed behind his back, he was thrown by officers across a room face-first into a footlocker. Was this use of force excessive?

II.    Under the PLRA's physical injury requirement, 42 U.S.C. § 1997e(e), litigants cannot obtain compensatory damages for mental and emotional injury without showing more than a de minimis physical injury. However, this bar has no bearing on the availability of damages for physical injury or punitive damages. Mr. Morris received injuries to his face warranting medical attention and requested punitive damages. Did he meet the requirements of § 1997e(e)? Even if not, would this provision bar all monetary relief?

III.    Under *Heck v. Humphrey* and principles of judicial deference, a district court cannot provide certain kinds of injunctive relief. Mr. Morris did not request injunctive relief. Did the district court err in basing its dismissal in part on its inability to grant certain kinds of injunctive relief when the plaintiff did not actually request such relief?

## STATEMENT OF THE CASE

### *I.    Mr. Morris Experienced a Mental Health Crisis When Officers Denied Him Access to Food and Ignored His Repeated Requests for Mental Health Care.*

On the morning of October 19, 2020, Carnell Morris, a 58-year-old diabetic man with a mental health diagnosis, prepared to leave his tier in the Allen Correctional Center for lunch. ROA.67, 79. When the call for mealtime came, he dressed quickly. ROA.79. But due to the effects of two different bladder medications, Mr. Morris needed a few extra moments to use the restroom. ROA.79. As a result, Mr. Morris ended up a few steps behind Sergeant Bihm, who was managing the tier. ROA.79. Rather than letting him through, Sgt. Bihm closed the door in Mr. Morris's face. ROA.67.

Mr. Morris was distressed about the effect that skipping a meal might have on his blood sugar and pleaded with Sgt. Bihm to let him eat. ROA.67, 79 ("Sir, I'm 58 years of age on 6 different types of medication with one of them being diabetic medication . . . so eating is important for my health."). When his pleas went unheeded, Mr. Morris asked to speak with Sgt. Bihm's superior officer, but Sgt. Bihm merely stood behind the bars, smirking. ROA.67-69.

Mr. Morris then made an emergent request to be seen by mental health staff, yelling the words "Homicide Suicide." ROA.67, 90 (prison policy stating that an emergent request, requiring a same-day response, is one where "an offender feels suicidal [or] homicidal"). Mr. Morris shouted and eventually got the attention of Acting Lieutenant Dozart, to whom he reiterated that he needed to see a mental health specialist. ROA.67-68.

Lt. Dozart, who is not a mental health provider, did not believe him. ROA.68 ("Lt. Dozart told the plaintiff that he did not need mental health . . . ."). Instead of allowing a mental health consultation to occur, Lt. Dozart told Mr. Morris that he was going to "lock [his] ass up." ROA.68. This deprivation of both food and mental healthcare finally sent Mr. Morris over the edge. He lost control, damaging two televisions and a microwave. ROA.68, 70.

## II.    *Officers Threw Mr. Morris—Handcuffed Behind His Back—Headfirst into a Footlocker.*

Soon thereafter, Major Estes and Lieutenant Trehan arrived. ROA.68. As the officers prepared to use chemical agent, Mr. Morris picked up a padlock attached to a belt and sat on a footlocker about thirty yards away from where the officers had gathered. ROA.68-69. Afraid of the impending gas attack, Mr. Morris continued to

shout his request to see a mental health specialist "over a dozen times." ROA.69.

These requests were, again, ignored. ROA.69.

Around noon, Maj. Estes, Lt. Trehan, and several other officers rushed Mr. Morris and sprayed him with two cans of chemical agent. ROA.69. This overwhelmed Mr. Morris, who backed away from them. ROA.69. He quickly surrendered, relinquishing the belt and padlock. ROA.69. The officers "wrestled [him] to the floor and handcuffed [him] behind the back." ROA.69.

Once Mr. Morris had been handcuffed, Lt. Trehan and two other officers lifted him off the floor. ROA.69. The three officers then threw the now-compliant Mr. Morris "to the other side of the dorm face first on a footlocker," causing "minor faceial injuries." ROA.69. The officers then brought him to receive medical treatment for the injury they had just inflicted. ROA.69. Mr. Morris was later brought to see a mental health specialist, "but the damage was already done." ROA.70.

## III.   *Procedural History*

On April 8, 2020, Mr. Morris filed a § 1983 civil rights complaint against four defendants, challenging their use of excessive force, denial of food, and denial of

medical and mental health care in relation to the October 19, 2020, incident.[1] ROA.1-36. Because he had neglected to seek in forma pauperis status, he was required to refile his complaint. ROA.47. He did so successfully on May 11, 2021. ROA.61-90. Mr. Morris sought an appointment of counsel. ROA.121-22. His request was denied. ROA.3-4.

Two supervisory officials were dismissed early in the litigation, a decision not challenged here. ROA.103-10. Maj. Estes and Lt. Trehan remained parties. ROA.103-10. After one failed attempt at service, both defendants' summonses were executed and returned. ROA.4 (attempted), ROA.196-97 (executed). Neither defendant nor any defense counsel appeared in the litigation at any time thereafter. ROA.1-6. On April 19, 2024, Mr. Morris sought entry of default against the remaining defendants. ROA.223-24. Then, on June 28, 2024, Mr. Morris notified the district court that Maj. Estes had died; as a result, he proceeds only against Lt. Trehan in the present action. ROA.236.

---

[1] Prior to filing his complaint, Mr. Morris submitted an administrative grievance to Warden Cooley on October 27, 2020, ten days after the initial incident. ROA.78-84. He requested that he be moved to a unit housing prisoners with medical needs, that the officers involved in the incident be terminated, that any disciplinary actions arising from the incident be expunged, and that he not be retaliated against. ROA.83. His third and final appeal was denied on December 30, 2020. ROA.87-89.

On July 25, 2024, the magistrate judge issued a brief report recommending that Mr. Morris's motion be denied and that the complaint be dismissed with prejudice. ROA.232-35. The court found that none of the relief Mr. Morris had requested was available even if his allegations proved true. ROA.234. First, the court concluded that the PLRA's physical injury requirement, 42 U.S.C. § 1997e(e), barred recovery of monetary damages because, it believed, he had not alleged more than a de minimis physical injury. ROA.233. Second, the court stated that Mr. Morris had sought termination of the defendant officers, and it determined that such relief was categorically unavailable in light of federal courts' deference "to the internal administrative decisions of prison officials." ROA.234. Finally, the court also stated that Mr. Morris had requested expungement of the disciplinary violations arising from the incident, and it determined that such relief would be *Heck*-barred unless and until his disciplinary violations were successfully challenged through habeas. ROA.234 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Over Mr. Morris's objections and without further analysis, the district court adopted the report and recommendation in its entirety and dismissed the case with prejudice. ROA.275-78, 294.

Mr. Morris filed a timely notice of appeal on August 21, 2024.[2] ROA.295-96. Undersigned pro bono counsel entered his appearance on September 11, 2024. Dkt. 7.

## SUMMARY OF THE ARGUMENT

I.      Mr. Morris successfully stated an excessive force claim under the Eighth Amendment. Under binding Fifth Circuit and Supreme Court case law, excessive force claims have both an objective and a subjective component. Objectively, the force must be more than de minimis. Throwing Mr. Morris across the room involved more than de minimis force. Subjectively, the force must have been malicious and sadistic for the purpose of causing harm. There was no need for any force once Mr. Morris was restrained, yet Lt. Trehan chose to throw him face-first into a footlocker with no plausible purpose other than to hurt him.

II.     Mr. Morris' claim is not barred by the PLRA's physical injury requirement, for three reasons. First, Mr. Morris has adequately alleged more than a de minimis

---

[2] On October 25, 2024, Mr. Morris mistakenly submitted a second notice of appeal to this Court, addressed to the district court. Dkt. 13. As reflected in the exhibit to that notice, it pertained to an unrelated state court case. However, it was forwarded to the district court, which docketed it in the matter underlying this appeal. After receiving notice of the filing, undersigned counsel spoke with the clerk of court for the Western District of Louisiana, who updated the relevant docket text accordingly. To the extent that the Court's records reflect another appeal having been consolidated with this one, it should be administratively closed.

17

injury, making him eligible for mental and emotional damages. Second, even an allegation of de minimis injury is sufficient to receive compensatory damages for physical harm under the PLRA. Third, Mr. Morris also requested punitive damages, which are never limited by the physical injury requirement.

III.     The district court created out of whole cloth an additional erroneous ground for dismissing Mr. Morris's claim: its unfounded belief that he had requested injunctive relief. He did not do so. Moreover, the District Court misapplied the two doctrines it employed to bar such relief. First, the district court incorrectly applied *Heck v. Humphrey* to preclude the perceived request to have the disciplinary violations arising from the incident expunged. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Because these disciplinary violations had no effect on his conviction or sentence, *Heck* would not apply. Second, the district court believed that judicial deference to prison administration did not allow it to grant what it perceived as a request to order the termination of the defendant prison officers. But the district court would have been capable of granting this injunctive relief if necessary to correct a constitutional violation.

18

## ARGUMENT

## *I.    Standard of Review*

The district court denied Mr. Morris's motion for default judgment, and dismissed his complaint as frivolous and for failure to state a claim under the requirements of the PLRA. ROA.234. The standard of review for both determinations is de novo. As always, Mr. Morris's complaint must be liberally construed given his status as a pro se litigant below.

Normally, the denial of a default judgment is reviewed for abuse of discretion. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). However, "[a] decision premised on an error of law" is necessarily an abuse of discretion. *In re Deepwater Horizon,* 785 F.3d 986, 999 (5th Cir. 2015). As a result, when a party does not dispute the factual determinations underlying the dismissal and instead argues that the decision was based on an error of law, an appeals court does not apply "the deference normally associated with abuse-of-discretion review." *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). Instead, it reviews those conclusions of law de novo. *Id.* (citing *Suate-Orellana v. Barr*, 979 F.3d 1056, 1062 (5th Cir. 2020)).

A dismissal under § 1915(e)(2)(B)(ii) of the PLRA for failure to state a claim is reviewed de novo and a dismissal under § 1915(e)(2)(B)(i) for frivolity is reviewed for abuse of discretion. *Green v. Atkinson*, 623 F.3d 278, 279-80 (5th Cir.

19

2015). However, when reviewing a dismissal under *both* provisions, the court applies de novo review. *Id.* at 280 (citing *Velasquez v. Woods*, 329 F.3d 420, 421 (5th Cir. 2003)). As a result, the court applies the same standard as to a Rule 12(b)(6) motion, "'taking the facts alleged in the complaint as true and viewing them in the light most favorable to' the plaintiff." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (quoting *Atkinson*, 623 F.3d at 280). The ultimate question is "whether the facts alleged by the plaintiff are sufficient to support a reasonable inference that the defendants are liable under § 1983." *Id.* (citing *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016)).

This Court must also consider Mr. Morris's status as a pro se litigant below. His complaint must be "held to less stringent standards than formal pleadings drafted by lawyers." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.   *Mr. Morris Has Adequately Alleged an Eighth Amendment Excessive Force Claim.*

Because the district court improperly deemed Mr. Morris' claim to be barred by the PLRA, it did not otherwise weigh in on the viability of the underlying allegations. Had it properly analyzed them, it would have found that Mr. Morris adequately pleaded facts to support his excessive force claim.

20

**A.** *Hudson* **and** *Whitley* **Establish the Legal Standard for an Eighth Amendment Excessive Force Claim.**

Under binding Supreme Court and Fifth Circuit case law, Eighth Amendment excessive force claims have an objective and a subjective component. By throwing Mr. Morris headfirst into a footlocker after he had been restrained, Lt. Trehan engaged in objectively harmful conduct for the subjectively malicious and sadistic purpose of causing harm.[3] Thus, Mr. Morris has plausibly alleged facts sufficient to show a violation of the Eighth Amendment's prohibition on excessive force.

To satisfy the objective component of an excessive force claim, the force must be more than de minimis, making it "harmful enough" to establish a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *id.* at 4 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Payne v. Parnell*, 246 F. App'x 884, 887-88 (5th Cir. 2007).

Next, to satisfy the subjective component, the force must have been used "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986); *see Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). Building on *Whitley*, *Hudson* directs courts to examine five factors

---

[3] Discovery would be necessary to support the contention that the force used before Mr. Morris' restraint was excessive. Mr. Morris does not waive the argument that the pre-restraint force was excessive and saves it for remand.

to make this determination: 1) the extent of injury suffered, 2) the need for force, 3) the relationship between the need and amount of force, 4) whether the threat was reasonably perceived by defendants, and 5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

Decisions of the Fifth Circuit have framed these components in different ways. Some analyze the subjective intent behind the force before analyzing whether the force was harmful enough to establish a constitutional violation. *See, e.g.*, *Payne*, 246 F. App'x at 887-88. Others squarely focus on whether the use of force exceeded the need for force, largely passing on the other inquiries. *See, e.g.*, *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016). Ultimately, however, these decisions all analyze both the extent of the force and the purpose behind it to determine whether it was excessive.

In evaluating claims of excessive force against prisoners, the Fifth Circuit regularly draws upon caselaw addressing such claims across the Fourth, Eighth, and Fourteenth Amendment contexts, so the following discussion will do so as well. *See Kitchen v. Dall. Cnty.*, 759 F.3d 468, 479 (5th Cir. 2014) (quoting *Petta v. Rivera*, 143 F.3d 895, 912 (5th Cir. 1998)) (noting this Court's "tendency to 'blur' the lines between [these] excessive force standards"). In particular, it is settled that "any force exerted by a law enforcement officer that would be . . . objectively unreasonable

22

[under the Fourth Amendment standard] would not fall within the de minimis language of *Hudson*." *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996).

## B. Mr. Morris's Claim Satisfies the Objective Prong Because the Force Used Was More Than De Minimis.

To determine if a use of force is objectively unreasonable under the Eighth Amendment, courts consider whether it was "'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Only "nominal" or "trivial" force is considered de minimis. *Ikerd*, 101 F.3d at 434; *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). All "nontrivial" uses of force are greater than de minimis, thus satisfying the objective prong of the excessive force test. *Mitchell v. Cervantes*, 453 F. App'x 475, 477 (5th Cir. 2011). This is "not a high bar." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). As the Seventh Circuit recently put it, *Hudson*'s de minimis force requirement was included "not to revive a significant-injury requirement" but merely to confirm that, unlike in the tort law of battery, there are some unconsented-to touchings—"[a]n unwelcome tickle with a feather," say—that are not actionable. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (acknowledging that some "manhandl[ing]" is inherent in the prison environment).

This Court has previously found that "nominal" and de minimis uses of force include simple pushing and shoving, or handcuffing a person too tightly, without

more. *Ikerd*, 101 F.3d at 434; *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). If Lt. Trehan had simply jostled Mr. Morris while lifting him to his feet, or gripped his arm too tightly, it would have been appropriate to classify his use of force as de minimis. By contrast, when Lt. Trehan lifted a prone Mr. Morris and threw him headfirst across the room into a metal object, his use of force was far from trivial.

Further, this Court has emphasized that when determining if a given use of force was de minimis, it must "be judged by the context in which that force is deployed." *Ikerd*, 101 F.3d at 434. "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next" if the threat is no longer present at the moment the force is used. *Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009). For example, while choking causing "fleeting dizziness, temporary loss of breath and coughing" is not constitutionally cognizable when an officer is appropriately conducting a search of a plaintiff's mouth, an identical use of force with identical effects is more than de minimis when it is then done a second time in retaliation. *Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir. 1999). Similarly, this Court affirmed the importance of context in *Mitchell*; twisting a plaintiff's arm and smashing his face into a wall became nontrivial and objectively unreasonable once he was complying with officers' orders. 453 F. App'x at 477-78.

24

The importance of context and timing cannot be overstated here. Mr. Morris was already handcuffed and subdued when Lt. Trehan threw him headfirst into a footlocker. No reasonable officer in Lt. Trehan's position would have felt that an infirm man, lying on the ground in submission, with his hands restrained behind his back, warranted such an extreme use of force. The force Lt. Trehan employed was objectively unreasonable: far greater than de minimis and harmful enough to establish a constitutional violation in the context of the incident.

## C. Mr. Morris' Claim Satisfies the Subjective Prong Because the Force Was Used Maliciously and Sadistically for the Purpose of Causing Harm.

Mr. Morris' complaint also satisfies the subjective component of an excessive force claim. Mr. Morris was a restrained, 58-year-old diabetic man reeling from the effects of chemical agent. Once he was restrained, throwing him headfirst into a footlocker was subjectively excessive under all five factors set forth in *Hudson.* 503 U.S. at 7; *see also Cowart*, 837 F.3d at 452-53. Moreover, even a single *Hudson* factor may be "so compelling as to overshadow the others and alone warrant a finding of excessive force." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013). Here, the use of force on a restrained person who no longer posed any threat compels a finding that it was excessive.

    *i.    The Extent of Mr. Morris' Injury is More Than De Minimis.*

The extent of injury weighs in the plaintiff's favor when he suffers more than a de minimis injury. *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022); *Benoit v. Bordelon*, 596 F. App'x 264, 267-68 (5th Cir. 2015). The Supreme Court has explained that when analyzing excessive force claims, "injury and force . . . are only imperfectly correlated," elaborating that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

In that vein, this Court has ruled that whether an injury is more than de minimis is "directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). It has held that so long as a plaintiff has experienced "some injury," his claim can proceed; "even relatively insignificant injuries" will rise above the de minimis level when the force used to cause them is excessive. *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022) (quoting *Ikerd*, 101 F.3d at 434-35) (describing the analysis as a "sliding scale, not a hard cutoff").

Mr. Morris plainly experienced "some injury." This is clear from the fact that Lt. Trehan and the other officer involved immediately recognized that Mr. Morris had sustained an injury and escorted him to the medical unit. ROA.69, 81. That he described his injury as "minor" does not undermine this conclusion; this Court has explicitly declined the suggestion that "minor" equals "de minimis." *See Baldwin v.*

26

*Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (concluding that a magistrate judge's characterization of an injury as "minor" did not constitute a determination that the injury was *"de minimis"*).

Mr. Morris' facial injuries are more than de minimis because they resulted from Lt. Trehan's excessive use of force, as the following discussion will demonstrate. Thus, the first *Hudson* factor weighs in his favor.

> ii.    *There Was Minimal to No Need for Force Once Officers Restrained Mr. Morris.*

Once Mr. Morris was handcuffed, the need for force was extremely minimal (at best) or entirely absent. This Circuit has held that "when a prison inmate engages in willful misconduct, a prison guard may use reasonable force to restrain him—but after the inmate submits, there is no need, and thus no justification, for the further use of force." *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir. 2020). It has also agreed with other circuit courts that "frequently" find "constitutional violations in cases where a restrained or subdued person is subjected to the use of force." *Cowart*, 837 F.3d at 454 (citing *Kitchen*, 759 F.3d at 479) (noting approvingly that "[t]he Third, Eleventh, and Eighth Circuits have each held that violent acts committed against a restrained inmate may give rise to a constitutional violation specifically under the *Hudson* analysis"). Once Mr. Morris was restrained, there was no further need or justification for force.

27

This Court has previously concluded that an incarcerated plaintiff has alleged facts sufficient to show the use of excessive force when officers have thrown him face-first into a hard object while handcuffed. For example, in *Clark v. Gonzalez*, it reversed a grant of summary judgment when a handcuffed plaintiff was slammed face-first into a wall by prison officers, reasoning that such force was likely designed to cause harm. *Clark v. Gonzalez*, 129 F.3d 612, at *2-3 (5th Cir. Oct. 23, 1997) (per curiam) (unpublished). Mr. Morris' facts are almost identical to *Clark*: both plaintiffs were handcuffed and thrown headlong into hard objects. Just as in that case, throwing a disoriented, defenseless, and restrained 58-year-old man head-first into a hard object is unjustifiable under the Eighth Amendment. Because there was further need to restore order, the use of such force was malicious and sadistic.

### iii.     The Injury Disproportionately Exceeded the Need for Force.

This Court has repeatedly recognized that force can become excessive once it is disproportionate to any need for force. *See Mitchell*, 453 Fed. App'x at 477 (force was "disproportionate to any possible provocation"); *Morris v. Trevino*, 301 F. App'x 310, 313 (5th Cir. 2008) (the force exerted by the defendant was "disproportionate to the amount of force necessary"). Such a shift from proportional to disproportional is likely to occur as a situation deescalates. *See Cowart*, 837 F.3d at 454 (finding excessive force where the plaintiff was "restrained and non-threatening," yet the defendant prison officer still punched him); *Aucoin*, 958 F.3d

28

at 381, 383 (5th Cir. 2020) (reversing dismissal of an excessive force claim with respect to the time after a plaintiff's "misconduct [had] ceased," when he was nonetheless beaten and maced); *Payne*, 246 F. App'x at 887 (explaining that once a plaintiff is in a "relatively vulnerable" position, a rational jury could find that there is no need for force). This shift can occur in seconds, and even before a plaintiff is completely incapacitated. *See Hyde v. City of Wilcox*, 23 F.4th 863, 871-72 (9th Cir. 2022) (concluding that while an initial use of force was justified, continued use of the same degree of force after the plaintiff was restrained and had stopped resisting would be excessive, even prior to placement in restraint chair); *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 954 (11th Cir. 2019) (concluding that the second deployment of a taser, eight seconds after the plaintiff had fallen to the floor where he lay motionless, was excessive, although the first deployment had not been)

Once Lt. Trehan restrained Mr. Morris, the continued use of more than de minimis force was textbook excessive because it had no justification. After Lt. Trehan and others sprayed Mr. Morris with two full cans of chemical agent and placed him in handcuffs behind his back, he was chemically and physically incapacitated. Once he presented no physical threat, the continued force against him was no longer proportional to the injury inflicted. *See Benoit*, 596 F. App'x at 267-68 (concluding that no force was needed once the plaintiff's hands and feet were shackled, rendering the force "excessive to the threat at the time").

29

If a prisoner continues to fight after being restrained, the continued use of force may be warranted. *Byrd*, 48 F.4th at 347-48 (finding the third factor weighed "only modestly" in favor of the defendant prison official when he struck a plaintiff "determined to fight through chemical spray and riot shields"). Here, Mr. Morris did not try to fight through chemical agent. He did not try to remove his restraints. He did not resist. After Lt. Trehan and another officer sprayed Mr. Morris with two cans of chemical agent, Mr. Morris backed away, set down the item he was holding, and gave up any resistance. The use of force necessarily exceeded any need, because there was none.

### iv.    The Defendant Did Not Reasonably Perceive Any Threat.

Once Lt. Trehan had restrained Mr. Morris, he could not have reasonably perceived any ongoing threat. Mr. Morris was down and surrounded. Instead, it is obvious that Lt. Trehan intended to cause harm when he threw Mr. Morris headfirst into a footlocker. *See Cowart*, 837 F.3d at 454 (quoting *Kitchen*, 759 F.3d at 479). Lt. Trehan has not offered any explanation of his conduct because he has not appeared in the proceedings below, but his actions speak for themselves.

Mr. Morris alleged facts about the circumstances leading up to this use of force that further support a finding that it was malicious and sadistic. Specifically, he put described concrete facts showing that officers in his unit set out to harm those housed in the unit that day. That morning, one officer, who later sprayed chemical

agent at Mr. Morris alongside Lt. Trehan, told another that he wanted to "lock [prisoners'] asses up." ROA.79-80. Later that morning, officers locked Mr. Morris on a tier and did not release him for mealtime. When another officer denied Mr. Morris' request for mental healthcare as he pleaded behind a locked door, the officer repeated the same language: he was going to "lock [Mr. Morris'] ass up." ROA.68. These facts offer additional support for the conclusion that Lt. Trehan and the other officers meant to cause the prisoners under their supervision, and particularly Mr. Morris, gratuitous harm.

     *v.*     *Lt. Trehan Did Not Make Efforts to Temper the Severity of a Forceful Response.*

Lt. Trehan's force was likewise excessive because he did not make efforts to temper the severity of a forceful response once Mr. Morris was handcuffed. After Lt. Trehan sprayed Mr. Morris with chemical agent and restrained him, he could have tempered the severity of his response by interacting with minimal force. In *Byrd*, by contrast, this factor weighed in favor of a prison officer who—confronted with a prisoner who "although restrained by several guards, continued to violently resist"—"stopped striking him the moment [he] stopped resisting." 48 F.4th at 348. In *Waddleton v. Rodriguez*, it weighted in favor of an officer who instructed a colleague to take his knee off the restrained plaintiff's torso. 750 F. App'x 248, 255 (5th Cir. 2018). Here, Lt. Trehan did not pull his punches, so to speak—he did the opposite.

31

Furthermore, there is reason to think that Lt. Trehan could easily have tempered the severity of his response even prior to chemically and physically restraining Mr. Morris, by calling in a mental health provider from the outset. Mr. Morris announced his mental health needs numerous times before he was sprayed with chemical agent, handcuffed behind his back, and thrown into a footlocker. ROA.67-68. At any one of these junctures, officers including Lt. Trehan could have tempered the severity of their response by bringing a mental health specialist to speak with Mr. Morris instead of using physical force to injure him. This factor, like the rest, weighs in Mr. Morris' favor.

## III.   Mr. Morris's Claim Is Not Barred by the PLRA's Physical Injury Requirement.

### A. The District Court Improperly Applied the PLRA's Physical Injury Requirement.

Under the PLRA, an incarcerated plaintiff may not bring a civil rights claim "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In order to recover for mental and emotional injuries, such physical injury "must be more than *de minimus,* but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). In applying § 1997e(e) in the absence of a definition of "physical injury" in the PLRA,

this Court has "derived the meaning of that term from Eighth Amendment excessive force jurisprudence." *Gomez*, 163 F.3d at 924.

The district court improperly applied this provision, incorrectly concluding that Mr. Morris was unable to recover any damages because his physical injuries were "minor" and therefore—it concluded—de minimis. This result was wrong for three reasons. First, Mr. Morris' physical injuries, though not severe, were more than de minimis, thereby satisfying the physical injury requirement and allowing him to recover for mental and emotional harm. Second, § 1997e(e) only ever bars compensatory damages for mental and emotional injury, not for an underlying physical injury. Third and finally, Mr. Morris requested punitive damages, which are never barred by the physical injury requirement.

## B. Mr. Morris Has Alleged More Than De Minimis Injury and Is Therefore Eligible to Receive Compensatory Damages for Both Physical and Mental and Emotional Injury.

Despite the district court's fixation on Mr. Morris's characterization of his facial injuries as "minor," this Court and others have found similar injuries to be more than de minimis—and therefore to satisfy the physical injury requirement. For much the same reasons that his claim exceeds the de minimis threshold set forth in substantive excessive force doctrine, it satisfies the PLRA's physical injury requirement. *See supra* Section II.C.

In *Gomez v. Chandler,* wherein this Court described as generally equivalent the de minimis injury analyses under substantive excessive-force doctrine and § 1997e(e), it concluded that scrapes and bruises to the head and body were more than de minimis injuries when the force used was unreasonable under the circumstances. 163 F.3d at 925. In that case, prison officers continued to hit the plaintiff after he stopped resisting and was handcuffed. *Id.* at 924-25. The decision emphasized the salience of the fact that the plaintiff's injuries required medical treatment.[4] *Id.* at 924. The opinion also underscored that the physical injury requirement was met because the force was calculated to cause physical harm. *Id.* It specifically held that "there is no categorical requirement that the physical injury be significant, serious, *or more than minor*." *Id.*; *see also Baldwin*, 137 F.3d at 840 ("minor" does not mean *"de minimis"*).

Just as in *Gomez*, Lt. Trehan's force was unreasonable under the circumstances because Mr. Morris was subdued and handcuffed. Despite a lack of any threat, Lt. Trehan threw him face-first into a hard surface, resulting in facial

---

[4] The need for medical care strongly suggests that a physical injury clears the § 1997e(e) threshold. *See Taylor v. Stevens*, 946 F.3d 211, 225 & n.23 (concluding that a distended bladder satisfied the requirement, because the plaintiff "had to be catheterized," and citing prior supportive caselaw), *vacated on other grounds sub nom. Taylor v. Riojas*, 592 U.S. 7 (2020); *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003) (vomiting did not satisfy physical injury requirement because it was not "severe enough to warrant medical attention").

injuries. Mr. Morris' injuries were such that Lt. Trehan immediately escorted him to receive medical attention. Lt. Trehan's force was also calculated to cause physical harm; Mr. Morris was incapable of resisting or even protecting himself from the impact. Just as in *Gomez*, Mr. Morris' injuries, although perhaps not serious, rise above the de minimis standard given these circumstances.

Other courts routinely agree that minor injuries can suffice. *See Bell v. Williams*, 108 F.4th 809, 829-30 (9th Cir. 2024) (visible marks on skin and a painful shoulder pop following a cell extraction satisfy § 1997e(e)); *see also McFadden v. Nicholson*, No. 1:14CV644, 2017 WL 991052, at *4 (M.D.N.C. Mar. 13, 2017) (bleeding from head and bad headaches), *report and recommendation adopted*, 2020 WL 4194538 (M.D.N.C. July 21, 2020); *Talib v. Riedl*, No. 3:14-cv-1388-J-39MCR, 2016 WL 696082, at *15 (M.D. Fla. Feb. 22, 2016) (small raised area behind left ear tender to touch, reddened area on left shoulder, and swollen right scrotum); *Morgan v. Comm'r Dzurenda*, No. 3:14-cv-966 (VAB), 2015 WL 5722723, at *11 (D. Conn. Sept. 29, 2015) (abrasions to and swelling of face, head, and back); *Sherman v. Orrell*, No. 6:13-cv-06049, 2015 WL 6131950, at *2 (W.D. Ark. Oct. 19, 2015) (continued pain, swelling, and stiffness of finger); *Montgomery v. May*, No. 5:15cv91/RV/EMT, 2015 WL 7575073, at *1 (N.D. Fla. Oct. 21, 2015) (cut on arm, soreness and swelling to elbow, and bump and soreness on face), *report and recommendation adopted*, 2015 WL 7575932 (N.D. Fla. Nov. 25, 2015); *Pames v.*

35

*Pierce*, No. C-1-12-285, 2014 WL 4773999, at *1 (S.D. Ohio Sept. 24, 2014) (swelling under eye); *Edwards v. Byrd*, No. 4:10CV02042 BSM/JTR, 2013 WL 12106339, at *1 (E.D. Ark. Feb. 11, 2013) (bruises, abrasions, and cuts), *aff'd in relevant part*, 750 F.3d 728 (8th Cir. 2014). This is true even when the plaintiff himself or a medical provider indicates that the injury is mild. *See, e.g.*, *Daniels v. Sproul*, No. 1:12-cv-4 (WLS), 2013 WL 3964813, at *1 (M.D. Ga. July 31, 2013) (cut on eye, headaches, and redness on chest, although plaintiff denied pain to medical staff); *D'Attore v. N.Y. City Dep't of Corr.*, No. 10 CIV. 815(JSR)(MHD), 2012 WL 4493977, at *15 (S.D.N.Y. Sept. 27, 2012) (pain in shoulder from being punched and shoved into wall, although jail doctor found no apparent injury and prescribed Tylenol), *report and recommendation adopted*, 2012 WL 5951317 (S.D.N.Y. Nov. 28, 2012).

This Circuit's analogous Fourth Amendment caselaw offers further support. In *Sam v. Richard*, this Court found that minor bleeding and hip pain were sufficient to support recovery on an excessive force claim where the officer's use of force was objectively unreasonable. 887 F.3d 710, 713-14 (5th Cir. 2018). District courts within the Fifth Circuit have interpreted this case law to suggest that even "a bruise" would be more than de minimis when the force used was excessive. *See Robertson v. Town of Farmerville*, 830 F. Supp. 2d 183, 190 (W.D. La. 2011) (finding the plaintiff's injuries were de minimis despite excessive force only because the plaintiff

failed to allege *any* physical injury, "such as a bruise"). In *Schmidt v. Gray*, "the resulting pain, soreness, and bruising" from having one's finger slammed in a car trunk, was, without more, sufficient. 399 F. App'x 925, 928 (5th Cir. 2010). In *Alexander v. City of Round Rock*, this Court found that nondescript injuries to the "body" and "mouth" that occurred when officers "knee[d] [the plaintiff] in the back" and "push[ed] his face into the concrete" were more than de minimis due to an excessive use of force. 854 F.3d at 309.

### C. The Physical Injury Requirement Applies Only to Compensatory Damages for Mental and Emotional Injury.

To the extent that a cognizable use of force can still cause de minimis injury for purposes of the PLRA—after all, the Supreme Court has explained, the correlation between force and injury is "imperfect," *Wilkins*, 559 U.S. at 38—§1997e(e) precludes only damages for mental and emotional harm and does not apply to compensatory damages for actual physical injury. Mr. Morris requested compensatory damages for physical as well as mental and emotional injuries. ROA.74-76. Hence, even if Mr. Morris had alleged only de minimis physical injury, and was therefore barred from receiving damages for mental and emotional injuries, he would still be eligible to recover whatever compensatory damages a finder of fact might award for the harm to his face.

Other courts of appeal have determined as much explicitly. The Tenth Circuit has held that the physical injury requirement applies only to the plaintiff's eligibility for mental and emotional damages in an excessive force case. *Archuleta v. Marshall*, 221 F.3d 1351, at \*2 (10th Cir. July 20, 2000) (unpublished). The Ninth Circuit has similarly concluded, in a solitary confinement case, that the physical injury requirement does not bar compensatory damages for physical rather than mental or emotional injury. *Grenning v. Miller-Stout,* 739 F.3d 1235, 1238 (9th Cir. 2014); *see also Tate v. Wiggins*, 805 F. App'x 159, 163 n.3 (3d Cir. 2020) (holding that the district court should have given a plaintiff leave to amend in order to allege a physical injury). District courts in other circuits have agreed. *See, e.g.*, *Jones v. Brown*, No. 2:16-cv-01505-AKK-JHE, 2017 WL 288540, at \*6 (N.D. Ala. June 16, 2017) (holding that a plaintiff may be compensated for "actual injuries" due to use of objectively unreasonable force, even if they are de minimis, and that the physical injury requirement affects only damages for mental and emotional injuries), *report and recommendation adopted*, 2017 WL 2876185 (N.D. Ala. July 6, 2017).

In cases involving violation of abstract rights (such as those protected by the First Amendment) which do not ordinarily involve physical injury, the courts of appeal have similarly made clear that the PLRA "bars only requests for compensatory damages stemming from purely mental or emotional harms." *Hoever*

38

*v. Marks*, 993 F.3d 1353, 1358 (11th Cir. 2021). As the Eleventh Circuit recently

explained:

> To rely on "physical injury," without regard to whether the plaintiff alleges a mental or emotional injury, renders the phrase "for mental or emotional injury suffered" superfluous. Under this reading, the statute would have simply said "[n]o Federal civil action may be brought by a prisoner . . . ~~for mental or emotional injury suffered~~ while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). But this is not the statute Congress passed. Instead, Congress included the qualifying phrase "for mental or emotional injury" to clarify that the physical injury requirement is associated only with those actions seeking compensation for mental or emotional injury.

*Id.* at 1363.

Other circuits agree. The Ninth Circuit has explained that when claims for

compensatory damages are based on Fourteenth Amendment violations "and not on

emotional or mental distress suffered as a result of those violations, §1997e(e) is

inapplicable and those claims are not barred." *Oliver v. Keller*, 289 F.3d 623, 630

(9th Cir. 2002). The Third Circuit has held that the physical injury requirement

"leaves untouched" claims for damages for violations of constitutional rights distinct

from claims for mental or emotional injury. *Allah v. Al-Hafeez*, 226 F.3d 247, 252

(3d Cir. 2000).

The Fifth Circuit has not squarely reached the question whether a plaintiff

may obtain compensatory damages for a de minimis physical injury in an excessive

force case, but at least one district court in the Fifth Circuit has expressly adopted

39

this view: "Nothing in the PLRA's language precludes recovery for compensatory damages when physical injuries have occurred and to altogether preclude such recovery [where there has been physical injury] would be unjust." *Alexander v. Hall*, No. 4:20-CV-21-SA-JMV, 2024 WL 4268017, at *4 (N.D. Miss. Sept. 23, 2024) (allowing plaintiffs to proceed with claims for "compensatory damages to the extent that they are based on physical injury"). If Mr. Morris had not alleged any physical injury, he could not seek compensatory damages. *See, e.g.*, *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 605-06 (5th Cir. 2008); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). But because he has alleged a physical injury, he is eligible to receive some compensatory damages—for the physical injury he suffered, at the very least—and the physical injury requirement cannot defeat his claim wholesale.

### D. Mr. Morris Has Sought, and Alleged Facts Sufficient to Support, Punitive Damages, Which Are Never Barred by the PLRA's Physical Injury Requirement.

The district court failed to recognize that Mr. Morris also sought punitive damages. As the Fifth Circuit has stated unequivocally, the physical injury requirement of § 1997e(e) does not bar punitive (or nominal) damages. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007); *see also Williams v. Kaufman Cnty.*, 352 F.3d 994, 1014-16 (5th Cir. 2003).

Mr. Morris included a request for punitive damages against the defendants in the operative complaint and reiterated it throughout this litigation, including by asserting its viability in his objections to the report and recommendation. ROA.21-22, 75-76, 130, 154, 239. And at a very minimum, he could have obtained nominal damages. *See Slicker v. Jackson*, 215 F.3d 1225, 1231-32 (11th Cir. 2000). As a result, the district court should not have dismissed Mr. Morris' claim for unavailability of a monetary damage remedy.

Of course, any award of punitive damages in § 1983 litigation requires a showing that the defendant's conduct is "motivated by evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Thompkins v. Belt*, 828 F.2d 298, 301-02 (5th Cir. 1987). However, because a claim of excessive force necessarily requires a finding of malicious intent, a successful excessive force claim is itself sufficient to permit an award of punitive damages. *Cowart*, 837 F.3d at 455 ("As [the plaintiff] correctly notes, the jury's verdict on [plaintiff's] excessive force claim—premised on a finding of malicious intent—permitted the jury to impose punitive damages." (citing *Smith*, 461 U.S. at 51-55)). Because Mr. Morris has asserted a viable excessive force claim, punitive damages are available if a finder of fact chooses to grant them.

41

## IV.   Although Mr. Morris Did Not Request Injunctive Relief, the District Court Improperly Dismissed His Claim on the Alternate (and Erroneous) Basis That It Could Not Grant Such Relief.

### A. Mr. Morris Did Not Seek Injunctive Relief in His Complaint.

The District Court erroneously believed that Mr. Morris sought injunctive relief (of two types). First, the District Court believed that Mr. Morris had requested that "all the officers involved in this incident be terminate from their employment." ROA.234. Second, it believed that Mr. Morris had requested that "'all disciplinary reports arisen from this incident be dismissed' and any guilty finding be reversed." ROA.234. The district court did not cite any filing on the docket wherein these requests could be found; indeed, they were never made of the district court.

The confusion seems to have arisen because Mr. Morris sought these remedies as a part of the prison's internal grievance process before filing a suit in federal court. *See* ROA.83 ("That all the officers involved in this incident be terminate from their employment here at Allen Correctional Center . . . That all disciplinary reports arrisen from this incident be dismissed and if found guilty of decision reversed."). However, no such injunctive relief was requested as a part of either his original or amended complaint. ROA.75-76. Because Mr. Morris did not seek this relief, the

42

district court's analysis was a non sequitur. Out of an abundance of caution, however, the further errors in its analysis are discussed briefly below.

**B. Even Had Mr. Morris Requested Expungement, *Heck* Would Not Apply to Prison Disciplinary Violations Which Do Not Implicate Criminal Convictions or Sentences.**

The district court concluded that the request it thought Mr. Morris had made—for an order that his disciplinary violations be expunged—would violate *Heck* vs. *Humphrey*. ROA.234. In *Heck*, the Supreme Court limited § 1983 civil rights actions in which the claims raised necessarily challenge the validity of the plaintiff's criminal conviction or sentence. *Heck v. Humphrey,* 512 U.S. 477, 489-90 (1994).

But as the Supreme Court and this Court have made clear, *Heck* does not "appl[y] categorically to all suits challenging prison disciplinary proceedings." *Muhammad v. Close*, 540 U.S. 749, 754 (2004) (reversing application of *Heck* to an incarcerated defendant's civil rights claims). Instead, it is relevant only in certain cases, such as where the disciplinary proceeding results in the revocation of good-time credits, thereby lengthening the effective sentence. *See Mosley v. White*, 464 F. App'x 206, 210-11 (5th Cir. 2010).

The injunctive relief the court believed Mr. Morris had sought concerned only the expungement of disciplinary violations arising from the October 19, 2020,

incident. ROA.83. But the sanctions he received involved merely the temporary suspension of certain privileges. ROA.89. Because Mr. Morris' disciplinary sanctions had no impact whatsoever on his underlying conviction or the duration of his sentence, *Heck* would have no bearing on such a request.

## C. Even Had Mr. Morris Requested Termination of Officers, Such Relief Would Be Available When Necessary to Correct an Eighth Amendment Violation.

Although Mr. Morris did not request that the district court terminate the employment of any defendants, the court's conclusion that it could not grant such relief was likewise in error. The court reached this conclusion in light of the general deference that federal courts give to the internal administrative decisions of prison officials. ROA.234 (citing *Shaw v. Murphy,* 532 U.S. 223, 230 (2001)).

But as this court has recognized for over fifty years, federal courts will interfere with matters of internal prison administration "where paramount federal constitutional or statutory rights intervene." *Krist v. Smith,* 439 F.2d 146, 147 (5th Cir. 1971). This court discussed the topic at length in *Anderson v. Nosser*, which recognized that although courts have a natural reluctance to involvement with a prison's internal discipline, this "chariness does not mean that prison officials have unfettered discretion in the treatment of their prisoners." 438 F.2d 183, 189 (5th Cir. 1971).

44

If Mr. Morris had requested that the prison officers involved in the incident be terminated, the district court could potentially have granted such injunctive relief upon making the appropriate findings. *See, e.g.*, *Madrid v. Woodford*, No. C90-3094-TEH, 2004 WL 2623924, at *8 (N.D. Cal. Nov. 17, 2004) (adopting a special master's recommendation that a prison be required to implement disciplinary procedures for officers charged with abusing force to remedy constitutional violations). Of course, in addition to the normal requirements for equitable relief, such a hypothetical injunction would need to meet the stringent requirements of the PLRA—that it be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation." 18 U.S.C. § 3626(a)(1)(A).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of Mr. Morris's complaint and remand.

SUBMITTED BY:

s/ Aaron Littman
UCLA School of Law
Prisoners' Rights Clinic
385 Charles E. Young Drive, E.
Los Angeles, CA 90095-1458
(310) 825-9562
littman@law.ucla.edu

45

Counsel for Appellant Carnell Morris

# CERTIFICATE OF SERVICE

I certify that on December 12, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon all counsel of record. I further certify that it was, on the same date, forwarded via U.S. Mail to the following party:

Lt. Trehan, Allen Correctional Center, 3751 Lauderdale Woodyard Road, Kinder, LA 70648

s/ Aaron Littman

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.1, it contains 8,667 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using Microsoft Word Version 16.

s/ Aaron Littman